JONES, Justice.
This case was tried in the Circuit Court of Madison County before the judge without a jury. Judgment was rendered against appellant for $26,875, and King Lumber Industries appeals here and Mrs. Cain cross-appeals.
The suit involves transactions between a husband and wife. The appellant corporation is almost entirely owned by the family of the husband.
Appellee and G. H. King, Jr., were married prior to 1945. In the year 1963 she obtained a divorce. Some few weeks later she remarried.
In 1945 or prior thereto, Mr. G. H. King, Sr., together with the appellee and her husband, was a resident of Louisiana, where the senior Mr. King had business interests.
The Denkmann Lumber Company had a large operation in Canton together with properties in Louisiana which the Kings decided in 1945 to purchase and did purchase. They formed a corporation known as the King Lumber Industries. On December 29, 1945, Mrs. Cain, then the wife of G. H. King, Jr., admittedly signed an instrument appointing G. H. King, Sr., as her agent and attorney-in-fact to attend the meeting of the incorporators of the King Lumber Industries to be held in Canton, Mississippi, on December 31, 1945; to subscribe in her name for stock in the company; to agree with the other persons becoming stockholders upon the time and place for the first meeting of stockholders; and to vote in her name at the stockholders’ meeting the stock so subscribed for by her.
The organizational meeting was held, and 250 shares of common stock (a gift from her husband) were issued to appellee, the wife of G. H. King, Jr., G. H. King, Sr., and G. H. King, Jr., at all times had a large majority of the stock.
On October 11, 1952, King Lumber Industries executed a deed of conveyance conveying to its stockholders, including appel-lee, their proportionate interests in the oil, gas, and minerals in certain lands situated in Livingston and St. Helena Parishes, Louisiana. The appellee, then known as Daudrille H. King, was conveyed an in *846 terest in these minerals equivalent to 4.-54546 percent, which was the same interest owned by practically all stockholders except G. H. King, Sr., and G. H. King, Jr., said G. H. King, Sr., having 50.000 percent. Then, on September- 10, 1953, the said stockholders to whom the minerals had been conveyed, including the appellee, executed and delivered to G. H. King, Sr., a power of attorney authorizing and empowering him to represent them in the handling of all matters connected with the minerals and mineral rights so conveyed. The said power of attorney which appellee signed contained a statement showing that those rights had been obtained “through act of sale from King Lumber Industries to its stockholders” dated October 11, 1952.
Appellee and her husband moved to Canton, where they lived for some time and until he was appointed as a member of the Federal Reserve Board, when he moved to Washington, D. C. They lived there for several years before returning to Canton.
The original 250 shares of common stock paid no dividends, but later a stock dividend was declared under the terms of which were issued in the name of the appellee 500 shares of preferred stock providing for an annual dividend of five percent. This was issued in 1952. In 1961 the 250 shares of common stock were exchanged for 875 shares of preferred stock bearing the same dividend.
There was maintained by the appellee and her husband in the bank of Canton a joint account in the name of “Mr. or Mrs. G. H. King, Jr.” All funds deposited in said account (except the dividends and about $600.00 from mineral rights above mentioned) were deposited by the husband from his own funds. This suit is to recover from King Lumber Industries dividends paid on such preferred stock, the checks for which, except one or two, were endorsed by the husband, G. H. King, Jr., and deposited in the joint account aforesaid. The record shows that Mrs. King checked on this account as she saw fit. In 1959, when more than $40,000 was deposited in the account, checks drawn by Mr. King amounted to something over $16,000 and ^by appellee to over $23,000. In 1960 over $28,000 was deposited, with Mr. King withdrawing approximately $9,-800 and Mrs. King withdrawing $28,665. In 1961 $26,837 was deposited in said account; Mr. King’s checks were $2,601, and Mrs. King’s lacked $95 of being $22,-000. In 1962 there was $19,000 deposited; Mr. King drew $1,368 and Mrs. King drew $16,481. In addition to this the evidence shows that when the appellee and her husband returned from Washington he paid bills which she had incurred there in the amount of approximately $7,000. The monthly bank statements on this account were mailed to the home and were checked by appellee. „
At or about the time of the separation, appellee, against the advice of her father-in-law (who told her of the heavy capital gains tax she would have to pay), sold the stock which had been given to her and received therefor $137,500, including an advance of $2,500 made a few months previously in anticipation of dividends.
After receiving the proceeds of the sale, she filed this suit seeking to recover the amount of the dividend checks which had been issued by King Lumber Industries in her name and deposited to the said joint account, and the amount of one check which was deposited by her husband in his personal account in the Deposit Guaranty Bank. One annual dividend check was received by the appellee and cashed by her. There was testimony that the check for 1956 was received by her.
The appellee admits she heard her husband and father-in-law discussing business matters, and she also admits that they had many papers for her to sign and that she signed them. However, she says that she did not understand anything about business and did not know what they were talking *847 about or what she was signing. The natural and necessary inference from this testimony is that she, as so many wives do, left all business transactions to her husband for him to handle. At least, she did not exert herself in any way to pursue the information known by her or which she should have known, and the transactions were handled this way from the time of the incorporation of the company until near the time of the dissolution of the marriage. While she says she knew nothing about stocks, she owned a small amount of stock in a bank in Louisiana acquired from another source. She was bound to have known of the formation of the company and her stock because she signed a waiver for the organizational meeting and she also signed the power of attorney to Mr. King to handle the minerals. Furthermore, she admits as heretofore stated that the two Kings and others discussed business matters in her presence, but she paid no attention to them. She also admits that she was advised that stock was placed in her name.
The proof by appellant was that the checks were handled by her husband with her knowledge and consent for him to endorse and deposit same.
All of the deposits heretofore shown as having been made in said joint account were made by G. H. King, Jr., and none except the dividend checks and checks from mineral rights aforesaid was the property of the appellee. As shown by the figures hereinbefore given she withdrew from said account thousands of dollars more than the total of such dividends and mineral checks.
Mr. G. H. King, Sr., whose veracity and honor were vouched for by appellee and her attorney, testified as to family meetings where business discussions relative to King Lumber Industries were held. Appellee, in her testimony, said she did not remember being present at any family meetings where the business of King Lumber Industries was discussed, but then stated, “Of course if I were sitting there I was included in the conversation some, but I wasn’t paying much attention to that. I didn’t understand enough about it.” She claimed on occasion that she knew nothing about owning any stock in the company in spite of the fact that she signed the proxy authorizing Mr. King to subscribe to it and despite admitting that they told her she had in her name the same amount of stock as George Staple-ton, another stockholder. By all of her actions, we think the King Lumber Industries was justified in believing that she was consenting to her husband’s handling the matters and that the company was justified-in relying upon the endorsement and deposit of said checks by her husband.
A person should not ignore his business to the extent that others are misled by such conduct. Her testimony was that she paid no attention to business, that she signed whatever they asked her to sign, and, in effect, that they managed it all.
We think that by her long period of failure to object, inquire, or learn (if indeed she did not already know) about the payment of the dividends, all information thereasto being available from company records, and her manifested desire that the men handle the business, she in effect appointed her husband as agent for that purpose and over these many years of such conduct acquiesced in and ratified what he did. 26 Am.Jur. Husband and Wife § 32 (1940). In 26 Am. Jur. Husband and Wife section 229 (1940), it is said:
In any case where a woman may act through her husband as her agent, she may also render his unauthorized acts as her agent binding on her by subsequent ratification of his acts in her behalf. Such ratification may be evidenced by, and presumed from, silence or acquiescence under circumstances under which one would naturally be expected to speak if he did not consent. The silence of the wife is usually more *848 significant where her husband really is her agent and has exceeded his powers than where he is not her agent at all. The wife’s silence is not acquiescence and cannot constitute ratification where she does not know and ought not to know the facts and circumstances, or where she had no opportunity for, or means of, repudiation.
A person having within his knowledge facts which would put him on inquiry as to his personal rights should be charged with notice of such information as such facts and the exercise of ordinary diligence would disclose. In this case appellee know that stock had been issued in her name; she know that the company had deeded minerals to her as a stockholder; she know that the company was operating; she was admittedly present at conversations regarding its affairs. If she had listened to this information about her own business or if she had exercised reasonable care and diligence in response to the knowledge she had, she would have ascertained that said dividend checks had been deposited in her account, and it would be inconceivable that the law would now charge King Lumber Industries with her lack of knowledge when the means of knowledge was not only within her possession, but as shown and not disputed, the facts had been openly discussed before her. She had completely ignored them and failed to exercise any care, diligence, or interest. In 66 C.J.S. Notice § 5 (1950), it is stated:
Although it has been held that actual notice differs from implied notice, implied notice is generally regarded as a kind of actual notice which consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; that which, if prosecuted with ordinary diligence, will furnish information of the fact. So actual notice often means knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably prudent persons to investigate and ascertain as to the ultimate facts, and it may include knowledge of all facts which a reasonable inquiry would have disclosed. Actual notice is implied only when the known facts are sufficiently specific to impose the duty to investigate further and when such facts furnish a natural clue to the ultimate fact. Implied notice arises from an inference of fact.
The facts of this litigation bring ap-pellee well within this rule. Being charged with this notice of what was transpiring, we do not know how she could hold the appellant for acts which she, being charged as aforesaid with notice thereof, has permitted or at least acquiesced in. Appellee charged appellant with concealed fraud, but under the evidence appellant was open in its dealings. Mr. King, Sr., was president, and appellee and her attorney vouched for him. Any information she sought would have been readily made available to her. She charges defendant with concealing its actions, but admits, as we see it, that she wanted her husband and Mr. King to handle matters.
Appellant pleaded the six-year statute of limitations, but in view of what is said above, we deem it unnecessary to discuss that statute or section 456 of Mississippi Code 1942 Annotated (1956).
Further, we do not think she was damaged in any way, because the money was placed to the account she shared with her husband and she actually withdrew thousands of dollars more than the total dividends.
We think the lower court was manifestly wrong in rendering judgment for appellee and cross-appellant; hence we are reversing the case and entering judgment for appellant.
Reversed and judgment here for appellant.
GILLESPIE, P. J., and RODGERS, BRADY, and SMITH, JJ., concur.