**H. H. HENDERSON, Dwaine Lee Henderson et al., Plaintiffs-Appellees Cross-Appellants,**

**v.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant Cross-Appellee.**

No. 78–2528.

United States Court of Appeals, Fifth Circuit.

July 3, 1980.

Rehearing and Rehearing En Banc Denied Aug. 19, 1980.

M. M. Roberts, S. Wayne Easterling, Hattiesburg, Miss., for defendant-appellant cross-appellee.

Guy M. Walker, Laurel, Miss., for H. H. Henderson, Dwaine Lee Henderson, et al.

J. C. Martin, Waynesboro, Miss., Horton Hillman, Leakesville, Miss., for plaintiffs-appellees cross-appellants.

Before WISDOM, FAY and TATE, Circuit Judges.

FAY, Circuit Judge:

An insured brought this diversity action against its insurance carrier for additional coverage and punitive damages under Mississippi law. Both sides appeal from district court rulings and a jury verdict for plaintiffs.[1] The insurance company, United States Fidelity and Guaranty Company (USF&G), contests the sufficiency of evidence of coverage, and the filing of two amended complaints. Plaintiffs cross-appeal, challenging the district court's denial of their punitive damages claim. Finding that the coverage question was one for the jury, we affirm the verdict, which was supported by substantial evidence. The decisions to allow amendments to the complaint are affirmed since no abuse of discretion is shown. We reverse, however, the denial of the punitive damages claim, because sufficient evidence existed to submit the issue to the jury.

## I. *Background For This Suit*

Plaintiff Henry Henderson owns a logging and lumberyard business in Mississippi. He owns many contracts of insurance on his property, and evidently does not possess copies of them all.

On November 7, 1969, Henderson purchased from USF&G's agent Sigler a liability insurance policy, number C3111037, with $50,000 coverage on a 1969 truck and trailer. Henderson habitually buys his liability coverage from Sigler. Henderson claims he never received a copy of the C3111037 policy. In 1970, Sigler billed Henderson for the renewal premium. It was paid approximately two weeks after the November 7 renewal date. The policy covers replacement vehicles if notice of the replacement is given to the insurance company within thirty days of purchase. Henderson replaced his 1969 truck with a 1971 Chevrolet truck.

C3111037 was modified to cover the 1971 replacement, which pulled the same trailer as the 1969 truck.

On November 2, 1971, one of Henderson's employees turned the 1971 truck over in the woods, wrecking it beyond repair. On November 10, Henderson purchased a 1972 GMC truck to replace the 1971 truck and to pull the same trailer. That same day, Henderson purchased another USF&G policy from the Ross-King-Walker agency, as he was required to do by the GMC loan financer. Henderson testified that he ordered only property collision insurance because he knew he had liability coverage through Sigler. The Ross agency, however, actually wrote a policy which gave Henderson $10,000 in liability coverage in addition to the collision coverage. Approximately two weeks after the wreck of the 1971 truck, Henderson sold it as junk.

On November 23, 1971, the new 1972 truck which was connected to the old trailer stalled while making a U-turn, causing Grady Stevison's vehicle to collide with the truck, and costing Stevison his life. The next day, Henderson claims he informed Sigler of the new 1972 replacement vehicle and the fatal accident. He says Sigler assured him he was covered. Sigler denies that this conversation occurred. Henderson states that on November 27, he received from USF&G a notice that C3111037 would not be renewed. The notice did not identify the property covered by C3111037, and since Henderson did not have a copy of the policy, he did not know which one the company was not renewing. The notice from USF&G was dated October 7, 1971, although at trial, no certificate of mailing was produced. Under Mississippi law, a nonrenewal is ineffective without thirty days' notice.[2]

Stevison's administratrix commenced a state court action in Greene County against Henderson and his truck driver. She offered to settle for $40,000. Henderson, con-

---

1. Joined as plaintiffs in this action are an employee of the insured, who drove a truck which caused the death of Grady L. Stevison, and Stevison's administratrix.

2. *See* note 3 *infra.*

fident that he had $50,000 liability coverage, conveyed the offer to USF&G. USF&G claimed that its only liability was for $10,000, informing Henderson for the first time of the Ross agency's liability policy on the 1972 truck. When USF&G refused to settle, Henderson brought a separate state court action in Wayne County attempting to uncover the $50,000 policy and to settle USF&G's liability under it. He sued under the only $50,000 policy of which he had a copy, but it was not the right one. When discovery efforts failed to produce the $50,000 vehicle liability policy, the Wayne County suit was dismissed without prejudice.

In the *Stevison* trial, the administratrix was granted a directed verdict on liability. The jury awarded $100,000 damages; with six-percent postjudgment interest. After appeal to the Supreme Court of Mississippi, USF&G tendered to the court $10,000 plus a five-percent penalty for appeal, plus interest. Henderson, the employee-driver, and Stevison's administratrix refused to release USF&G from further liability, claiming that a $50,000 policy existed. This action followed in federal district court, in which the plaintiffs claim that USF&G is liable under a $50,000 policy and is subject to punitive damages for wrongful denial of coverage and failure to settle the *Stevison* lawsuit.

As in the Wayne County suit, Henderson originally filed this action under the wrong policy. Not until Sigler's files were produced at his deposition were the records of C3111037 supplied to Henderson. The complaint was then amended to allege the correct policy number.

## II. *The Parties' Theories*

Henderson asserts that he was covered under the $50,000 policy, C3111037, even though the renewal date has passed without his tendering the renewal premium. Mis-

sissippi law provides that an insurer cannot refuse to renew a policy unless it gives thirty days' advance notice. Miss.Code § 83–11–7 (1972).[3] Henderson argues that he did not receive notice of nonrenewal until after the accident; therefore, the policy had not lapsed. His failure to pay the renewal premium does not invalidate the policy because he had established a billing and credit relationship with Sigler and because Mississippi law allows cancellation for nonpayment only after ten days' notice. Miss.Code § 83–11–5 (1972). Not only was the policy effective, but it also covered the 1972 GMC truck because, as provided in the policy, Henderson gave Sigler notice that the 1972 truck was a replacement vehicle within thirty days of its purchase. Henderson reasons, therefore, that USF&G is liable under C3111037 and that the jury verdict should be affirmed as modified.[4]

Henderson's correlative theory is that USF&G is liable for punitive damages for failing to settle the *Stevison* case and for denying coverage. Throughout the *Stevison* trial and the Wayne County suit, Henderson asserted that a $50,000 vehicle liability policy existed. Despite Henderson's claims and discovery attempts, USF&G withheld C3111037. Henderson argues that sufficient evidence exists for granting punitive damages under Mississippi law, and that the trial court's refusal to present this issue to the jury is reversible error.

USF&G contends that Henderson's theory of coverage is one dreamed up long after the events now in question. USF&G's position is that notice of nonrenewal was given on October 7, 1971, and that the policy therefore expired on November 7, before the fatal accident. Furthermore, it argues that the 1972 GMC truck cannot be a replacement because it does not meet the definition of a replacement vehicle and because USF&G did not receive notice of the

---

**3.** The statute reads in part as follows:

No insurer shall fail to renew a policy unless it shall mail or deliver to the name insured, at the address shown in the policy, at least thirty (30) days' advance notice of its intention not to renew.

Miss.Code § 83–11–7 (1972).

**4.** The trial court reduced the verdict by $293, the amount of the unpaid premium.

replacement until this litigation. It also contends that the policy cannot be in force because the premium was never paid.

Besides contesting Henderson's factual allegations, USF&G asserts that Henderson could not have two policies on the same vehicle in effect at once and that he should not have been allowed to amend the complaint to cover C3111037 after Sigler's deposition. USF&G argues that the jury verdict should therefore be reversed.

### III. Amendment Was Proper

USF&G contests the trial court's allowance of an amendment to the complaint which brought C3111037, the $50,000 policy, into issue. This action was filed on May 10, 1976. On August 5, 1976, an amended complaint was filed to reflect USF&G's tender into state court of the $15,328.80 owed after appeal under the $10,000 policy. Two days after Sigler's deposition, Henderson moved to amend the complaint to change the policy number upon which this action was based from a premises liability policy to the $50,000 vehicle liability policy. The court granted the motion and the second amended complaint was filed September 22, 1977, nine months before trial. Without citation to authority, USF&G argues that the trial court "had no right or authority" at that late date to permit another amended pleading involving a different insurance contract.

The trial court's authority to permit amendment is found in Fed.R.Civ.P. 15(a). That rule provides that amendment will be "freely [granted] when justice so requires." Appellate review is restricted to determining whether the trial court abused its discretion in granting leave to amend. Harkless v. Sweeny Independent School District, 554 F.2d 1353, 1359 (5th Cir.), cert.

denied, 434 U.S. 966, 98 S.Ct. 507, 54 L.Ed.2d 452 (1977). The district court can consider many factors in exercising its discretion, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment. . . ." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The court also can examine whether undue prejudice to the movant will result from denying leave to amend. Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69, 75–77 (5th Cir. 1961).

USF&G does not advance a convincing case of prejudice; it does not argue that the amendment or delay inhibited its ability to defend. The reasons for delay in amending make clear Henderson's good faith and the unfair prejudice that would have resulted from a denial of the amendment. From the beginning, Henderson claimed that he had $50,000 of coverage, that he did not know in which policy the coverage was contained, that he did not have copies of all policies, and that he wanted copies from USF&G. Despite a separate state court suit, interrogatories, and requests for production, USF&G did not produce the $50,000 policy until Sigler's deposition, which was taken after the filing of the first amended complaint in this case. Within two days of the deposition, Henderson moved to amend the complaint. One purpose of the liberal policy embodied in rule 15(a) is to permit the addition of matters unknown at the time the complaint was filed.[5] Under these facts, the district court did not abuse its discretion in allowing Henderson to amend his complaint.[6]

---

5. This policy does not rescue lawyers lacking diligence. Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979); see Lamar v. American Finance System, 577 F.2d 953, 955 (5th Cir. 1978). When serious effort, however, fails to uncover needed facts or theories until after the complaint's filing, amendment may, within the trial court's sound discretion, be proper.

6. USF&G also argued that because Henderson stated in his first two pleadings that C3111037 was not involved in this action, he should be estopped from changing his position. USF&G denied those allegations in Henderson's two pleadings, and shows no prejudice from Henderson's turn-around, which, according to Henderson, was due to USF&G's own failure to disclose materials on discovery.

## IV. *The Policy Was In Effect*

Under the scenario advanced by USF&G, notice of nonrenewal of insurance was sent to Henderson October 7, the policy expired November 7, and the 1972 GMC truck was not covered by C3111037. The 1972 GMC was not a replacement and no authorized agent received notice of replacement. Only one policy, the $10,000 policy, covered the GMC truck, and the $50,000 C3111037 policy could not also cover it, especially since the premium was never paid.

The primary flaw in USF&G's position is that it relies upon resolution in USF&G's favor of factual issues that are within the jury's province. USF&G's remaining arguments are not supported by the law.

■ Notice is usually a jury question in Mississippi. Notice of nonrenewal or cancellation can be proved by production of a certificate of mailing, Miss.Code § 83–11–9 (1972),[7] but no such certificate was produced at this trial. In interpreting the language of insurance contracts, the Supreme Court of Mississippi has held that the agent's testimony that the letter was mailed and a post office certificate are adequate proof of notice. *See Transamerica Insurance Co. v. Bank of Mantee*, 241 So.2d 822, 824–25 (Miss.1972) (on rehearing), *interpreting Employers Mutual Casualty Co. v. Nosser*, 250 Miss. 542, 164 So.2d 426 (1964). When a certificate is not submitted, however, the jury is not required to believe that notice was sent or received:

> The testimony of an insurance agent, like the testimony of any other witness, is to be weighed and evaluated by the trier of facts, taking into consideration other testimony and the surrounding circumstances in the case, and, if the surrounding circumstances are such as to outweigh the statement of an insurance agent that he mailed the required notice, the jury or trier of facts is not bound to accept the agent's statement simply because the agent so testified.

**7.** This section reads as follows:

Proof of mailing of notice of cancellation, or of intention not to renew, or of reasons for cancellation to the named insured by a certif-

*Transamerica Insurance Co. v. Bank of Mantee*, 241 So.2d at 825.

■ Evidence supports the jury's finding that notice was not given until after the fatal accident. Even before Henderson knew C3111037 was the correct policy, he asserted in his two prior complaints that he had received the nonrenewal notice for C3111037 on November 27. No employee of USF&G's main office testified that the notice was sent October 7. Sigler could not testify that his office had received its copy of the notice shortly after October 7. Sigler did testify that it was his agency's practice to send its own notice of nonrenewal whenever it received a copy of such notice from USF&G's main office. Record, vol. III, at 27–28. No copies of a separate notice were in Sigler's file. The slender thread supporting USF&G's position is a copy of the USF&G notice, dated October 7, in Sigler's file. The jury was free to find that USF&G had not actually sent notice on that date, but had back-dated the notice and mailed it after learning of the accident.

■ Similarly, sufficient evidence exists to support a finding that USF&G had notice that the 1972 GMC had replaced the 1971 Chevrolet truck. Sigler had effected such a replacement in the past. He testified that he had authority to bind USF&G. Record, vol. III, at 29. Henderson testified that he gave notice of the replacement within thirty days, as the policy requires. The district court did not err in allowing the jury to decide these notice issues.

■ Citing a Missouri case, USF&G argues that the 1972 truck does not meet the definition of a replacement vehicle. Even assuming that the case applies in Mississippi, it renders USF&G no aid because taking the facts as resolved by the jury, the 1972 truck meets all the requirements of the definition.[8]

icate of mailing, at the address shown in the policy, shall be sufficient proof of notice. Miss.Code § 83–11–9 (1972).

**8.** The case states that the vehicle must have been acquired after the policy's issuance, dur-

■ USF&G's argument that the policy was ineffective because the premium was not paid fails for two reasons. First, the argument may rest on factual assumptions decided by the jury adversely to USF&G. The jury could have found that Sigler had a billing and credit arrangement with Henderson which made the nonpayment irrelevant. Second, Mississippi law requires ten days notice before a policy can be cancelled for nonpayment of the premium. Miss. Code § 83–11–5 (1972). No such notice was given.

USF&G cites neither case precedent nor a contract clause supporting its position that Henderson could not have had two policies on the same vehicle. When two different insurers cover the same property, the courts usually prorate the loss between them. *See* 8 J. Appleman, Insurance Law and Practice § 4913 (1962). USF&G advances no reason why two policies from the same insurer should be treated differently. Furthermore, Henderson asserts that the only reason he had two liability policies was because of error by USF&G's agents. USF&G's contention is meritless.

The jury verdict finding coverage under C3111037 is affirmed.

### V. *Punitive Damages: A Jury Question*

Henderson cross-appeals the district court's failure to submit the claim for punitive damages to the jury.[9] In denying the claim, the court relied upon a Mississippi case which held that an insurer's refusal to settle within policy limits in a contested case does not constitute either negligence or fraud. *Farmers Gin Co. v. St. Paul Mercury Indemnity Co.*, 186 Miss. 747, 191 So. 415 (1939).

■ Under Mississippi law, punitive damages can, within limits, be assessed for breach of contract. The act giving rise to punitive damages must be "a willful and intentional wrong, or . . . such gross negligence and reckless negligence as is equivalent to such a wrong." *Seals v. St. Regis Paper Co.*, 236 So.2d 388, 392 (Miss. 1970). Punitive damages are denied when the insurance company defends, rather than settles, a close case, *Farmers Gin Co. v. St. Paul Mercury Indemnity Co.*, 186 Miss. 747, 191 So. 415 (1939); when it honestly contests the amount of damage, *Progressive Casualty Insurance Co. v. Keys*, 317 So.2d 396 (Miss.1975); when it contests coverage and effectively cannot recover reimbursement from the insured if it settles with the injured party and is later held not liable under the policy, *Martin v. Travelers Indemnity Co.*, 450 F.2d 542 (5th Cir. 1971); and when it contests coverage because the insured has failed to meet a policy condition, *Lincoln National Life Insurance Co. v. Crews*, 341 So.2d 1321 (Miss.1977). Punitive damages will not be awarded if the insurer has a legitimate or arguable reason for not paying the claim. *See Standard Life Insurance Co. of Indiana v. Veal*, 354 So.2d 239, 248 (Miss.1978).

Punitive damages were allowed when an insurer used its superior bargaining position to delay in paying any part of separate claims, despite the insured's dire financial straits, because of an unwritten policy to pay the whole claim at once. *Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829 (Miss.1979). Punitive damages were also proper when the reason for denying payment was contrary to an express term in the policy. *Standard Life Insurance Co. of Indiana v. Veal*, 354 So.2d 239 (Miss.1978).

---

ing the policy period, to replace the vehicle the policy describes, which was disposed of or incapable of further service. *Beck Motors, Inc. v. Federal Mutual Insurance Co.*, 443 S.W.2d 200, 203 (Mo.App.1969), *quoting, State Farm Mutual Automobile Insurance Co. v. Shaffer*, 250 N.C. 45, 108 S.E.2d 49 (1959). The 1972 truck was bought after issuance, while the policy was effective, to replace the 1971 truck, which was incapable of further service. Therefore the 1972 truck was a replacement vehicle.

**9.** At each stage of trial, Henderson raised the punitive damages claim; at each stage the district court ruled against him. Because we hold that the district court erred at each stage, we review the decision under the stiffest standard, that for a directed verdict or judgment n. o. v. *Boeing Company v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc).

The Supreme Court of Mississippi expressed the policy behind granting punitive damages in these cases:

> If an insurance company could not be subjected to punitive damages it could intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity. To permit an insurer to deny a legitimate claim, and thus force a claimant to litigate with no fear that claimant's maximum recovery could exceed the policy limits plus interest, would enable the insurer to pressure an insured to a point of desperation enabling the insurer to force an inadequate settlement or avoid payment entirely.

*Id.* at 248.

■ Henderson claims that despite his continued assertion that he had a $50,000 policy with USF&G, and despite the separate suit brought and discovery attempted in Wayne County, USF&G hid the C3111037 policy. Because of USF&G's acts, Henderson could not settle with the administratrix for $40,000, and was exposed to a $100,000 liability. Henderson testified that he gave Sigler notice of the replacement. Record, vol. III, at 67. USF&G's investigator testified that USF&G had knowledge soon after the accident that Henderson was asserting that he had $50,000 of coverage, not $10,000. *Id.* at 136–37. The evidence could support a jury verdict that USF&G withheld the policy at the time of the suit over the accident in the face of Mr. Henderson's request for copies of all his policies. The directed verdict is therefore reversed. In light of the high standards to be met before punitive damages are assessed, a jury may well find that gross negligence, recklessness, fraud, or other intentional wrongs are not reflected in USF&G's conduct. Nevertheless, when the evidence is viewed in the light most favorable to Henderson, substantial evidence exists sufficient to overcome a motion for directed verdict. *Boeing Company v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc).

■ This reversal is proper even though under Mississippi caselaw, USF&G had an arguable defense to coverage, which ordinarily would be sufficient to immunize its actions from punitive sanctions. If Henderson's position is accepted, USF&G's acts in hiding the policy render ineffectual any other defense it had to the punitive damages claim. If USF&G had delivered the policy and asserted its coverage defenses, Henderson could have successfully brought a separate action to settle the insurance question, as he tried to do. If coverage had been established, as it was in the trial of this case, then serious settlement negotiations could have been undertaken with the administratrix, who was willing to settle within the $50,000 policy's limits. Henderson would not have been held liable for $100,000. Should a jury determine that USF&G's refusal to be forthright, until after stalwart efforts by Henderson, blocked this solution their other defenses to the punitive damages claim are rendered invalid.

## CONCLUSION

The jury verdict, as amended by the district court, is AFFIRMED. The district court's decision to withhold the issue of punitive damages from the jury is REVERSED and REMANDED for trial.