**Karl R. GORMAN, Plaintiff-Appellant,**

v.

**SOUTHEASTERN FIDELITY INSURANCE COMPANY, Defendant-Appellee.**

No. 85–4301.
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1985.

As Amended on Denial of Rehearing Jan. 6, 1986.

---

**656**

Donald C. Dornan, Jr., William C. Walker, Jr., Biloxi, Miss., for plaintiff-appellant.

Floyd G. Hewitt, Jr., Biloxi, Miss., for defendant-appellee.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

The appellant, Karl R. Gorman, procured an automobile insurance policy from the appellee, Southeastern Fidelity Insurance Company, through the Buntyn and Veazey Insurance Agency of Gulfport, Mississippi. The policy period was June 3, 1982, 3:05 p.m., through June 3, 1983, at 12:01 a.m.

The policy premiums were paid by Gorman and a policy was issued and sent by Southeastern to Gorman at his address as indicated on the application for insurance. The insurance policy on Gorman's automobile included collision coverage. It was not a continuing agreement but a one-year contract. At the expiration of the policy period, the insured was required to submit a new application for insurance coverage. The policy explicitly provided that no renewal would be effective prior to receipt of the renewal premium by Southeastern at its offices.[1]

Approximately two months prior to the expiration of his insurance policy, Gorman moved and failed to notify either the Buntyn and Veazey Agency or Southeastern of his new address. Southeastern did not routinely notify its policyholders of upcoming expiration dates but, as a courtesy, provided such lists to the respective agencies through which the policyholders had obtained coverage. Buntyn and Veazey sent notice to Gorman at the address on the insurance application that his policy was due to expire and that he should come in and fill out the paperwork necessary to renew his insurance coverage. Gorman denies ever having received the letter. Gorman failed to make arrangements for the renewal of his policy and, thus, the original policy expired on June 3, 1983, at 12:01 a.m.

On June 4, 1983, at approximately 5:20 p.m., Gorman was involved in a one-car accident in the vehicle that had been insured by Southeastern. On the following Monday, Gorman reported the accident to the Buntyn and Veazey Agency, who informed Southeastern. Southeastern denied the claim on the grounds that no coverage was in effect because the policy had expired by its own terms at 12:01 a.m. on the day before the accident.

---

1. Clause 24 of the policy provided:

    All coverages afforded hereby shall expire at the expiration of the term of this policy or at the expiration [of] any renewal term thereof. In the event the Insured and the Company agree to renew this policy, such renewal may be effected by means of a renewal certificate to be attached to this policy, or at the option of the Company by issuance of a new policy, but no renewal term shall become effective prior to the actual receipt of the premium in payment for the same and acceptance thereof by the Company at the Company's office.

When Southeastern denied his claim, Gorman retained counsel who made demand on Southeastern for payment under the policy. Specifically, Gorman's counsel informed Southeastern that, under its interpretation of the Mississippi Code, Gorman's policy automatically renewed when Southeastern failed to give timely notice that the policy was about to expire and that Southeastern was willing to renew it. *See* Miss. Code Ann. § 83–11–7 (1972). Southeastern reviewed the relevant Mississippi statutes and contacted local counsel. Southeastern then reaffirmed its denial of the claim based on advice of counsel and on their interpretation of the relevant Mississippi statute as not requiring an insurance company to give notice that a policy was due to expire or of the insurer's willingness to renew the policy. Negotiations nevertheless continued and Southeastern eventually determined that it was in the best economic interests of the company to acknowledge the claim and settle with General Motors Acceptance Corporation, the loss payee, as to the amount of its lien on Gorman's automobile. Southeastern paid GMAC and obtained an indemnifying release. Despite this payment, on February 13, 1984, Gorman filed this suit against Southeastern alleging tortious breach of contract, breach of fiduciary duty, and fraud in the inducement. Under each count, Gorman also alleged that Southeastern was guilty of "bad faith" and sought punitive damages.

After conducting extensive discovery, Southeastern filed a motion for summary judgment or, in the alternative, a motion for partial summary judgment on the issue of punitive damages. The district court entered judgment in favor of Southeastern as to Counts II and III of the complaint and granted Southeastern's motion for partial summary judgment under Count I as to

punitive damages. The district court further ordered that Gorman's complaint be dismissed unless he could amend Count I of the complaint to allege a claim for pending actual contractual damages exceeding $10,000 pursuant to 28 U.S.C. § 1332. When Gorman's amended complaint failed to assert such a claim,[2] the district court entered final judgment in favor of Southeastern. Gorman filed a timely notice of appeal.

In his brief on appeal, Gorman challenges only the district court's entry of summary judgment in favor of Southeastern on the punitive damages issue raised in Count I of the complaint. While Mississippi substantive law governs this case, the federal rules of civil procedure determine the propriety of the district court's entry of summary judgment. *See Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985). Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate when, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Galindo*, 754 F.2d at 1216. The moving party carries the burden of establishing the absence of any genuine issue of material fact. *Bynum v. FMC Corp.*, 770 F.2d 556, 576 (5th Cir.1985). Once this burden has been met, the burden then shifts to the opposing party to demonstrate through affidavits or other competent evidence that a genuine issue of material fact does exist. *Id.* Contrary to the assertions in his brief on appeal, Gorman failed to respond to Southeastern's motion for summary judgment. *See* Fed.R.Civ.P. 56(e).[3]

---

**2.** In his brief on appeal, Gorman states that the actual cash value of the automobile exceeded the amount of the lien and, thus, that Southeastern is still liable to him for the cash value of the automobile that exceeded the lien payoff. It is this amount of money which Gorman sought in his amended complaint, which was dismissed for failure to meet the jurisdictional requirements of 28 U.S.C. § 1332.

**3.** Gorman did file his own motion for summary judgment against Southeastern on its counterclaim for malicious prosecution. This motion was unsupported by affidavits but purported to rely upon "the pleadings, interrogatories, depositions, and the decisional law of the State of Mississippi."

The district court, finding that the issue was one of first impression in the Mississippi courts, concluded that Southeastern had an "arguable reason" for denying Gorman's claim and entered summary judgment in its favor.

Under Mississippi law punitive damages are not recoverable for breach of contract unless the breach is attended by an intentional wrong, insult, abuse, or such gross negligence as to constitute an independent tort. *Consolidated American Life Ins. Co. v. Toche*, 410 So.2d 1303, 1304 (Miss. 1982). Because "punitive damages are assessed as an example and warning to others, they should be allowed only with caution and within narrow limits." *Id.* at 1304–05. *See also Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d 239, 247 (Miss.1977). "Mississippi bad faith insurance law permits the award of punitive damages only when the insurer has no 'arguable or legitimate reason' for denying an insured's claim." *Starkville Municipal Separate School District v. Continental Casualty Co.*, 772 F.2d 168, 170 (5th Cir., 1985) (citing *Blue Cross & Blue Shield of Mississippi v. Campbell*, 466 So.2d 833, 841 (Miss.1984); *Veal*, 354 So.2d at 248). Furthermore, the issue whether an insurer has been guilty of "bad faith" conduct does not always present an issue of fact for the jury. In *Campbell*, the Mississippi Supreme Court held that:

When the presentation of all evidence has been completed by both sides, it is the function and responsibility of the trial court to determine whether the insurance carrier had a reasonably arguable basis, either in fact or in law, to deny the claim. If he finds there was a reasonably arguable basis to deny the claim, then the plaintiff is not entitled to have the jury consider any "bad faith" award against the insurance company.

Any plaintiff asking for punitive damages, or any special or extraordinary damages based upon "bad faith" of an insurance company has a heavy burden.

466 So.2d at 842. *See also Reserve Life Ins. Co. v. McGee*, 444 So.2d 803, 809 (Miss. 1983).

On appeal, Gorman argues that automobile policies do not "run out" in Mississippi and that insurers are required to afford their insured's continuous coverage, regardless of whether the insured wishes to stay with its present insurer or has paid the premium. Southeastern, on the other hand, argues that the Mississippi courts have not addressed the issue whether Miss. Code Ann. § 83–11–7 (1972) requires an automobile insurer to notify its insured both that his policy is about to expire and that it is willing to renew the existing policy. Thus, Southeastern argues that, in light of the unsettled nature of this question under Mississippi law, its actions in denying Gorman's claim were based upon a legitimate and arguable reason.

Section 83–11–5 of the Mississippi Code instructs an insurer on the proper procedure for cancellation of an insurance policy:

No notice of cancellation of a policy to which section 83–11–3 applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty (20) days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten (10) days' notice of cancellation accompanied by the reason therefor shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than fifteen (15) days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation.

This section shall not apply to nonrenewal.

Miss.Code Ann. § 83–11–5 (1972).

Section 83–11–7 is entitled "Nonrenewal" and provides:

No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in

the policy, at least thirty (30) days' advance notice of its intention not to renew. This section shall not apply:

(a) if the insurer has manifested its willingness to renew, subject to certain specified conditions which are not met by the insured; nor

(b) if the insured has manifested its unwillingness to renew; nor

(c) in case of nonpayment of premium; nor

(d) in case of failure to make timely payment of dues to, or to maintain membership in good standing with, a designated association, corporation, or other organization where the original issue of such policy or renewal was dependent upon such membership; provided that, notwithstanding the failure of an insurer to comply with this section, the policy shall terminate on the effective date of any other insurance policy with respect to any automobile designated in both policies.

Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal, and if a policy shall be cancelled as authorized by this article prior to such policy's renewal, such cancellation shall terminate any right of renewal conferred by this article.

Miss.Code Ann. § 83–11–7 (1972).

Section 83–11–7 appears directed to a situation where an insurer has made a conscious decision not to renew a policy at its expiration date. The statute does not appear to address, however, the issue whether notice is required before an existing policy expires when the insurer is willing to renew the policy but has not been contacted by the insured regarding any such renewal.

This issue has never been addressed by the Mississippi courts. Gorman relies on the case of *Henderson v. United States Fidelity and Guaranty Co.*, 620 F.2d 530, 532 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980), for the proposition that "[u]nder Mississippi law, a non-renewal is ineffective without thirty days' notice." (Footnote omitted.) *Henderson,* however, involved an insurer who had decided, before the expiration of the insurance policy, that it did not wish to renew that policy. The sole issue in *Henderson* was whether the insured had received the appropriate thirty day notice pursuant to § 83–11–7. Research has not revealed any additional cases construing this statute.

Contrary to Gorman's assertions, the Mississippi courts have not yet construed the statute to require "automatic continuous coverage" for Mississippi policyholders. Thus, the expiration provision of Southeastern's policy has not been shown to be violative of Mississippi law. Even assuming, without deciding, that the Mississippi statute does provide for "automatic continuous coverage," Gorman is still not entitled to punitive damages here.

The Mississippi Supreme Court, in cases of first impression, has refused to award punitive damages even though its ultimate decision was against the insurer. *See Gulf Guaranty Life Ins. Co. v. Kelley,* 389 So.2d 920, 922–23 (Miss.1980). *See also Michael v. National Security Fire & Cas. Co.,* 458 F.Supp. 128, 131–32 (N.D.Miss. 1978). There are no reported opinions construing § 83–11–7 in the situation presented by this case. Furthermore, this Court has stated that good faith reliance upon the advice of counsel may also prevent the imposition of punitive damages. *Henderson v. United States Fidelity and Guaranty Co.,* 695 F.2d 109, 113 (5th Cir.1983). *See also Stanton v. Astra Pharmaceutical Products, Inc.,* 718 F.2d 553, 580 (3rd Cir. 1983). In this case, Southeastern, after being contacted by Gorman's counsel, retained local counsel who expressed the opinion that no notice was required under § 83–11–7 in this situation.

The basic facts in this case are not in dispute. Because of the ambiguous statutory language and the lack of judicial interpretation of this specific section of the Mis-

sissippi statutes, Southeastern was entitled to rely upon its, and its local counsel's, interpretation that no notice was required by the statute in this situation. Accordingly, as a matter of law, Southeastern had a legitimate or arguable reason for denying Gorman's claim. The judgment of the district court is AFFIRMED.