United States Court of Appeals,

Fifth Circuit.

No. 91–1981.

Vickie C. STRICKLAND and Lelland Creel, Plaintiffs–Appellants,

v.

MOTORS INSURANCE CORPORATION (MIC) and General Motors Acceptance Corporation, Defendants,

Motors Insurance Corporation (MIC), Defendant–Appellee.

Sept. 2, 1992.

Appeal from the United States District Court for the Southern District of Mississippi.

Before HILL[*]*, KING, and DAVIS, Circuit Judges.

PER CURIAM:

pellant Vickie Strickland appeals the district court's finding that she possessed constructive notice that her automobile insurance coverage had lapsed and the court's resulting decision to grant summary judgment in favor of appellee Motors Insurance Corporation. Because we read the Mississippi case law as stating that constructive notice is insufficient to overcome a statutorily compelled requirement of thirty days notice in this situation, we reverse the district court's order granting summary judgment. The district court's denial of Strickland's claim for punitive damages against Motors Insurance Corporation is affirmed.


FACTS

Appellant Strickland purchased an automobile from a Laurel, Mississippi dealer under an installment sales contract in late 1982. The dealer assigned the contract to General Motors Acceptance Corporation (GMAC). Under the sales agreement, Strickland was required to maintain damage insurance on the vehicle. In the event she failed to procure such insurance, the contract gave GMAC the option of buying it for her, passing along the premium payment to Strickland.

---

*Senior Circuit Judge of the Eleventh Circuit, sitting by designation.

At the time of purchase, Strickland obtained "dual coverage insurance" from Motors Insurance Corporation (MIC). (GMAC and MIC are both subsidiaries of General Motors.) The insurance premium for the first year was financed under the original auto purchase contract. Mississippi law prescribes thirty days notice of expiration prior to the non-renewal of an insurance policy. Miss.Code Ann. § 83–11–7 (1991). In late 1983, near the time that the policy was due to expire, MIC, under its Finance Renewal Insurance (FIR) plan, notified Strickland of her renewal options.

The FIR plan provides that, where a vehicle is financed by GMAC and insured by MIC, MIC will notify GMAC about policies soon due to expire. Upon receipt of such notification, GMAC will inform MIC which of its policyholders may be offered the option of financing their renewal premium through an increase in their outstanding loan balance, with a corresponding increase in monthly payments already due to GMAC. MIC will then make an offer of renewal to the policyholder in the form of an "extension certificate" at least thirty days prior to the expiration of the policy. In the event of no response from the policyholder, MIC will notify GMAC at least one day prior to expiration in order to allow GMAC to pay the premium, should it so desire.

Strickland made no response to the 1983 extension certificate mailed to her by MIC, and GMAC exercised its option to finance her renewal premium. Strickland was mailed a new payment booklet, with her monthly payments raised to reflect the 1983 premium paid by GMAC. When, in late 1984, the policy was again up for renewal, this same procedure was repeated and another new payment book was mailed to Strickland.

In 1985, however, MIC failed to mail an extension certificate to Strickland.[1] Nor did MIC

---

[1]This matter was in dispute when this court heard its first appeal from this case, and was the basis for this court's first remand to the district court. Prior to the district court's second hearing of this case, MIC claimed it had mailed the extension certificate to Strickland, and Strickland countered that she had never received it. On remand, however, the dispute was resolved by the district court—MIC did not mail the extension certificate.

inform GMAC that the policy was up for renewal and there had been no response from Strickland, which would have allowed GMAC to consider whether to again pay the renewal premium due on Strickland's policy. Consequently, GMAC took no action to finance the renewal, and did not mail Strickland a new payment book as it had done in previous years. On December 29, 1985, MIC treated Strickland's policy as lapsed for non payment of the renewal premium. Strickland was not notified of this action.

In the meantime, Strickland gave the car and her payment booklet to her brother, with the understanding that he would maintain payments due to GMAC. Neither GMAC nor MIC was informed of this arrangement. Five months after the policy lapsed, with payments two months in arrears, the car was wrecked. GMAC repossessed the car and sold it at a private sale. Strickland made demand on MIC for coverage under the policy, which MIC denied, claiming that the policy had lapsed. Strickland filed suit in Mississippi state court against MIC and GMAC, who removed the case to federal court.

PRIOR PROCEEDINGS

This is the second time that this court had heard an appeal in this case. Strickland's suit before the district court alleged breach of a duty to keep the car insured, improper repossession, and independent bad faith tort claims. The district court granted summary judgment in favor of GMAC and MIC, concluding that neither of the defendants had a contractual duty to maintain insurance on the auto; that GMAC's prior actions under the FIR plan did not create a continuing duty to finance the renewal premiums; that GMAC properly repossessed and sold the car; and that plaintiffs were not entitled to punitive damages as they had failed to prevail on the coverage issue. Strickland timely appealed that judgment.

This court, in an unpublished opinion, affirmed the district court's summary judgment with respect to GMAC, but vacated and remanded the judgment with respect to MIC. The panel reasoned

that summary judgment was inappropriate as there was a genuine issue of whether MIC had in fact

sent the extension certificate, providing notice to Strickland that the policy was due to expire. *See*

note 1, *supra.* This court remanded the case to the district court with the instruction that:

> If the district court determines that the extension certificate was not duly mailed, it should determine whether Strickland had actual or constructive notice or should have known the policy had expired at some point during the five months this premium remained unfinanced and unpaid. *Cf. Estate of Beinhauer v. Aetna Casualty & Surety Co.,* 893 F.2d 782, 786–87 (5th Cir.1990).

On remand, the district court "perceive[d] its only task to be that of assuming, without

concluding, that the extension certificate was not duly mailed and thence proceeding to determine,

if possible, the existence, if any, of actual or constructive notice."[2] The court concluded that

Mississippi law does recognize the doctrine of constructive notice, and that Strickland had received

constructive notice that her policy had lapsed.

The district court reasoned that because Strickland admittedly knew she had been purchasing

policies in twelve month increments, and that the policies would not be renewed unless she or

someone else paid for such renewal, she had knowledge of facts which were sufficient to impute a

legal inference of constructive notice upon her. In reaching this conclusion, the district court relied

primarily upon *King Lumber Industries v. Cain,* 209 So.2d 844 (Miss.1968):

> A person having within his knowledge facts which would put him on inquiry as to his personal rights should be charged with notice of such information as such facts and the exercise of ordinary diligence would disclose.

---

[2]The district court's assumption is correct—Production of a "certificate of mailing" establishes a rebuttable presumption that a notice of cancellation has reached its final destination. *Carter v. Allstate,* 592 So.2d 66, 73–74 (Miss.1991). The same result should obtain in situations of notice of nonrenewal.

In it's first review of this case, this court made note of the fact that MIC did not offer into evidence a "certificate of mailing," and offered no proof that the extension certificate was mailed other than to present testimony that it is the usual practice of the company to do so. Accordingly, MIC never established a presumption that the extension certificate was mailed.

*Id.* at 848.

Finding "overwhelming justification" for the inference that Strickland had constructive notice at some point during the five months from the time the twelve month policy lapsed and the car was wrecked, the court granted MIC's second motion for summary judgment, and this appeal ensued.

ISSUE

Taking the case, as we do, with the factual dispute regarding MIC's failure to send the extension certificate resolved as discussed in note one, *supra,* we are presented with the question of whether, under Mississippi law, Strickland possessed sufficient knowledge so that, despite the complete absence of statutorily compelled notice by the insurer, she may nonetheless be said to have received constructive notice that her insurance policy was due to lapse.

DISCUSSION

Mississippi law requires that an insurer provide the insured with thirty days notice of an intention not to renew the policy. Miss.Code Ann. § 83–11–7 (1991).[3] Strickland's policy with MIC contained a provision which restated this notice requirement. As we are presented with none of the situations which would remove this non-renewal case from the thirty day notice requirement § 83–11–7, MIC was statutorily and contractually obligated to provide her with thirty days notice.[4]

---

[3]Mississippi law provides for different notice periods in situations of non-renewal and cancellation. Where a policy is canceled for non payment of a premium, the insurer is required to provide only ten days notice to the insured. Miss.Code Ann. § 83–11–5 (1990).

[4]The Code provides, in relevant part:

> *Non-renewal*
>
> No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least thirty (30) days advance notice of its intention not to renew. This section shall not apply:
>
> > (a) if the insurer has manifested its willingness to renew, subject to certain specified conditions which are not met by the insured; nor

Because it is settled that no notice was in fact given by MIC to Strickland, we examine whether Strickland received constructive notice.

From the case law which exists on the subject, it appears that Mississippi law does recognize constructive notice in these circumstances. *See Cain, supra,* 209 So.2d at 848; *McDonald v. East Jasper County School District,* 351 So.2d 531 (Miss.1977). As discussed further *infra,* it may be entirely reasonable to conclude that Strickland had constructive notice that her policy had lapsed. However, whether that constructive notice is sufficient to overcome the statutorily mandated notice requirements of Mississippi Code § 83–11–7 is an altogether different question.

"[I]mplied notice is generally regarded as a kind of actual notice which consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; that which, if prosecuted with ordinary diligence, will furnish information of the fact." *Cain,* 209 So.2d at 848 (quoting 66 C.J.S. Notice § 5 (1950)).

---

(b) if the insured had manifested its unwillingness to renew; nor

(c) in the case of nonpayment of premium. [ ].

Miss.Code Ann. § 83–11–7 (1991).

Part C (B) of MIC's policy with Strickland states that in the event MIC decided not to renew the policy, the insured would be given thirty (30) days notice prior to cancellation, in accordance with § 83–11–7.

Where an insurer has manifested its willingness to renew a policy, subject to the condition precedent that the insured pay the renewal premium, subsection (a), above, removes that situation from this statutory section. MIC, however, failed to mail the extension certificate to Strickland and manifest its willingness to renew.

Part C (C) of MIC's policy with Strickland stated that, in the event MIC offered to renew the policy, failure to submit the renewal premium by the prescribed deadline would constitute a refusal of that offer by the insured. Where that offer to renew is made, and the insured does not respond, the insurer is not obligated to supply thirty days notice prior to cancellation. *Estate of Beinhauer v. Aetna Casualty & Surety Co.,* 893 F.2d 782, 785 (5th Cir.1990). This is in accordance with subsection (c), above. However, we are presented with a situation here where there was no offer to renew and no obligation imposed upon the insured to respond.

In *Cain,* the plaintiff sued a lumber company for dividend checks issued to her as a shareholder. The Supreme Court of Mississippi applied the doctrine of implied actual notice and reversed a judgement in the plaintiff's favor. The court found that the plaintiff knew sufficient information about her business affairs to enable her to have learned that her husband had been depositing the dividend checks into their joint account, from which she had drawn large sums of money. The court concluded that it would be "inconceivable that the law would now charge King Lumber Industries with [the plaintiff's] lack of knowledge when the means of knowledge was not only within her possession, but as shown and not disputed, the facts had been openly discussed before her." *Id.; see also Crawford v. Brown,* 215 Miss. 489, 61 So.2d 344 (1952); *Stanley v. Stanley,* 201 Miss. 545, 29 So.2d 641 (1947).

The district court noted that the facts in *Cain* were different from those in the present case, but nonetheless relied upon its statements regarding constructive (actual implied) notice in granting summary judgment in favor of MIC. The most noteworthy of the factual differences between the two cases is the absence of any statutory notice obligation in *Cain.* The district court noted that a more recent case which does involve a statutory notice requirement, *McDonald v. East Jasper City School District,* 351 So.2d 531 (Miss.1977), limited the broad language of *Cain.* We find the reasoning of *McDonald* persuasive in the present case.

In *McDonald,* the plaintiff had received constructive notice that his teaching contract would not be renewed by the local district when he was so informed by the principal of the school where he taught. The Supreme Court of Mississippi ruled that this constructive notice could not supersede the specific directive of § 37–9–107 of the Mississippi Code that teachers whose contracts will not be renewed must be given notice by certified mail within seven days of the decision not to renew. The *McDonald* court recognized the doctrine of constructive notice, but held that strict compliance with the statutory notice requirement was deemed essential if the Public School Fair Dismissal Act was to have any meaning. *Id.* at 533, *citing Jackson v. Board of Education of Oktibbeha County,*

*Mississippi,* 349 So.2d 550 (Miss.1977).

The district court distinguished *McDonald,* reasoning that strict compliance with the notice statute in that case was "motivated, if not controlled," by the legislative intent behind the Act. Citing *Jackson,* the district court noted that:

> It is manifest that one purpose of the [Public School Fair Dismissal] Act is to give those teachers who are not to be reemployed for the ensuing year early notice of that fact so that they might seek employment elsewhere.... The Act serves a just purpose and was enacted by the legislature to protect those persons enumerated [in the statutory section] from unfair and sometimes vindictive practices of their employers.

*Jackson,* 349 So.2d at 553.

The reasoning of *McDonald* is more applicable to the present case than that found in *Cain.* Initially, we note that the *McDonald* court specifically addressed whether constructive notice may abrogate a statute's specific notice requirements, an issue not even contemplated in *Cain.* Second, even though the Mississippi Supreme Court has not yet ruled that the notice requirements of § 83–11–7 are mandatory, the reasoning of *McDonald* is, quite simply, directly applicable here. Section 83–11–7's notice provisions reflect an overall legislative intent that motorists secure insurance on their vehicles. *See generally,* Miss.Code Ann. § 83–11–1, *et seq.* (1991). As with the Act contemplated in *McDonald,* the notice provision in the insurance statute is necessary to inform motorists whose insurance is not to be renewed that they must obtain insurance elsewhere prior to the termination of their current policies.

In following this court's directives on remand, the district court reached factual findings touching upon whether actual notice had been given and whether contructive notice may have developed. The district court's inquiry into constructive notice focused upon whether Strickland had received notice sometime during the five months which elapsed *after* the policy lapsed. The purpose of the statutory notice requirement is to enable those motorists who, for whatever reason, will not

have their policies renewed by their insurers to procure new insurance *before* the time of lapse. *See Carter v. Allstate,* 592 So.2d 66, 74 (Miss.1991). In the absence of a legislative notice requirement, what happens after lapse would not be altogether irrelevant. However, the interests safeguarded by the Mississippi Code necessitate notice well in *advance of* a policy's expiration date.

Forethought and caution might dictate that insured motorists keep a close watch on the expiration date of their policies to avoid inadvertent lapse. However, where the legislature has imposed a notice requirement upon the insurer, the absence of such forethought by the insured is not an adequate foundation to support the suspension of the statutory notice requirement. While Strickland may have received constructive notice here, that notice was not sufficient to relieve MIC of its statutorily prescribed duty under § 83–11–7 to give her actual notice that her policy was due to terminate.[5] Accordingly, the district court's granting of summary judgment in favor of MIC is reversed.

We affirm, however, the district court's denial of punitive damages against MIC. Mississippi's insurance law allows punitive damages only where an insurer has no arguable or legitimate reason for denying coverage. *Gorman v. Southeastern Fidelity Insurance Co.,* 775 F.2d 655, 658 (5th Cir.1985) (*citing Blue Cross and Blue Shield of Mississippi v. Campbell,* 466 So.2d 833, 841–42 (Miss.1984)). The statutory language here is less than clear and MIC's interpretation of the statute as not requiring notice under these facts does not make it susceptible to punitive damages.

---

[5]This conclusion is bolstered by the analogous ruling of the Mississippi Supreme Court in *Bankers & Shippers Ins. v. Meridian Naval Federal Credit Union,* 431 So.2d 1123 (Miss.1983). The court held that, under Mississippi Code Ann. § 83–13–9, an insured's duty to notify a lienholder that a policy will terminate absent receipt of a renewal premium is absolute and failure to provide the notice will continue the policy. We especially note the following:

> While prudence would indicate that lending institutions keep an accurate file calling their attention to the expiration date on insurance policies, this does not, under our statute, relieve an insurance company of the obligation to notify a lienholder named in the policy.

*Id.* at 1126.

## CONCLUSION

The district court's granting of summary judgment in favor of MIC is REVERSED.  The district court's denial of punitive damages against MIC is AFFIRMED.  The matter is REMANDED for further proceedings in accordance with this opinion.